1  Lincoln D. Bandlow, Esq. (CA #170449)
   Lincoln@BandlowLaw.com
2  **Law Offices of Lincoln Bandlow, PC**
   1801 Century Park East, Suite 2400
3  Los Angeles, CA  90067
   Phone: (310) 556-9680
4  Fax: (310) 861-5550

5  Attorney for Plaintiff
   Strike 3 Holdings, LLC

6

7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11  STRIKE 3 HOLDINGS, LLC,              Case Number:

12              Plaintiff,               **COMPLAINT FOR COPYRIGHT INFRINGEMENT - DEMAND FOR JURY TRIAL**

13  vs.

14  JOHN DOE subscriber assigned IP
    address 23.242.45.118,
15
                Defendant.
16

17

18        Plaintiff, Strike 3 Holdings, LLC ("Strike 3" or "Plaintiff"), brings this

19  complaint against Defendant, John Doe subscriber assigned IP address

20  23.242.45.118 ("Defendant"), and alleges as follows:

21                        **Introduction**

22        1.    This is a case about the ongoing and wholesale copyright

23  infringement of Plaintiff's motion pictures by Defendant, currently known only by

24  an IP address.

25        2.    Plaintiff is the owner of award-winning, critically acclaimed adult

26  motion pictures.

27        3.    Strike 3's motion pictures are distributed through the *Blacked*,

28  *Blacked Raw*, *MILFY*, *Slayed*, *Tushy*, *Tushy Raw*, *Vixen*, and *Wifey* adult websites

1

and DVDs.  With millions of unique visitors to its websites each month, the brands are famous for redefining adult content, creating high-end, artistic, and performer-inspiring motion pictures produced with a Hollywood style budget and quality.

4.    Defendant is, in a word, stealing these works on a grand scale.  Using the BitTorrent protocol, Defendant is committing rampant and wholesale copyright infringement by downloading Strike 3's motion pictures as well as distributing them to others.  Defendant did not infringe just one or two of Strike 3's motion pictures, but has been recorded infringing 41 movies over an extended period of time.

5.    Although Defendant attempted to hide this theft by infringing Plaintiff's content anonymously, Defendant's Internet Service Provider ("ISP"), Spectrum, can identify Defendant through his or her IP address 23.242.45.118.

6.    This is a civil action seeking damages under the United States Copyright Act of 1976, *as amended*, 17 U.S.C. §§ 101 et seq. (the "Copyright Act").

### Jurisdiction and Venue

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (jurisdiction over copyright actions).

8.    This Court has personal jurisdiction over Defendant because Defendant used an Internet Protocol address ("IP address") traced to a physical address located within this District to commit copyright infringement.  Therefore: (i) Defendant committed the tortious conduct alleged in this Complaint in this State; (ii) Defendant resides in this State and/or; (iii) Defendant has engaged in substantial – and not isolated – business activity in this State.

9.    Plaintiff used IP address geolocation technology by Maxmind Inc. ("Maxmind"), an industry-leading provider of IP address intelligence and online

2

1  fraud detection tools, to determine that Defendant's IP address traced to a physical

2  address in this District.  Over 5,000 companies, along with United States federal

3  and state law enforcement, use Maxmind's GeoIP data to locate Internet visitors,

4  perform analytics, enforce digital rights, and efficiently route Internet traffic.

5          10.     Pursuant to 28 U.S.C. § 1391(b) and (c), venue is proper in this

6  district because: (i) a substantial part of the events or omissions giving rise to the

7  claims occurred in this District; and, (ii) the Defendant resides (and therefore can

8  be found) in this District and resides in this State.  Additionally, venue is proper in

9  this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases) because

10  Defendant or Defendant's agent resides or may be found in this District.

11                                              **Parties**

12          11.     Plaintiff, Strike 3 is a Delaware limited liability company located at

13  2140 S. Dupont Hwy, Camden, DE.

14          12.     Plaintiff currently can only identify Defendant by his or her IP

15  address.  Defendant's IP address is 23.242.45.118.  Defendant's name and address

16  can be provided by Defendant's Internet Service Provider.

17                                      **Factual Background**

18                              ***Plaintiff's Award-Winning Copyrights***

19          13.     Strike 3's subscription-based websites proudly boast a paid

20  subscriber base that is one of the highest of any adult-content sites in the world.

21  Strike 3 also licenses its motion pictures to popular broadcasters and Strike 3's

22  motion pictures are some of the highest selling adult DVDs in the United States.

23          14.     Strike 3's motion pictures and websites have won numerous awards,

24  such as "best cinematography," "best new studio," and "adult site of the year."

25          15.     Strike 3's motion pictures have had positive global impact, leading

26  more adult studios to invest in better content, higher pay for performers, and to

27  treat each performer with respect and like an artist.

28          16.     Unfortunately, Strike 3, like a large number of other makers of

3

---

Complaint – Demand for Jury Trial

1  motion picture and television works, has a major problem with Internet piracy.

2  Often appearing among the most infringed popular entertainment content on

3  torrent websites, Strike 3's motion pictures are among the most pirated content in

4  the world.

*Defendant Used the BitTorrent File Distribution Network*

*to Infringe Plaintiff's Copyrights*

7  17.    BitTorrent is a system designed to quickly distribute large files over

8  the Internet. Instead of downloading a file, such as a movie, from a single source,

9  BitTorrent users are able to connect to the computers of other BitTorrent users in

10  order to simultaneously download and upload pieces of the file from and to other

11  users.

12  18.    BitTorrent's popularity stems from the ability of users to directly

13  interact with each other to distribute a large file without creating a heavy load on

14  any individual source computer and/or network.  It enables Plaintiff's motion

15  pictures, which are often filmed in state of the art 4kHD, to be transferred quickly

16  and efficiently.

17  19.    To share a movie within the BitTorrent network, a user first uses

18  BitTorrent software to create a .torrent file from the original digital media file.

19  This process breaks the original digital media file down into numerous pieces.

20  20.    The entire movie file being shared has a hash value (*i.e.*, the "File

21  Hash").  A hash value is an alpha-numeric value of a fixed length that uniquely

22  identifies data.

23  21.    Hash values are not arbitrarily assigned to data merely for

24  identification purposes, but rather are the product of a cryptographic algorithm

25  applied to the data itself.  As such, while two identical sets of data will produce

26  the same cryptographic hash value, any change to the underlying data – no matter

27  how small – will change the cryptographic hash value that correlates to it.

28  22.    To find and re-assemble the pieces of the digital media file, *i.e.*, to

4

1  download the file using BitTorrent, a user must obtain the .torrent file for the

2  specific file that has been broken down into pieces.

3       23.    Each .torrent file contains important metadata with respect to the

4  pieces of the file. When this data is put into the cryptographic algorithm, it results

5  in a hash value called the "Info Hash."

6       24.    The "Info Hash" is the data that the BitTorrent protocol uses to

7  identify and locate the other pieces of the desired file (in this case, the desired file

8  is the respective file for the infringing motion pictures that are the subject of this

9  action) across the BitTorrent network.

10       25.    Using the Info Hash in the metadata of a .torrent file, a user may

11  collect all the pieces of the digital media file that correlates with the specific

12  .torrent file.

13       26.    Once a user downloads all of the pieces of that digital media file from

14  other BitTorrent users, the digital media file is automatically reassembled into its

15  original form, ready for playing.

16       27.    Plaintiff has developed, owns, and operates infringement detection

17  systems named "VXN Scan" and the "Cross Reference Tool".  Each infringement

18  detection system identifies infringement in two distinct ways.

19       28.    The Cross Reference Tool first searched for and obtained .torrent

20  files claiming to be infringing copies of Plaintiff's works, and then VXN Scan

21  downloaded complete copies of the digital media files that correlate to those

22  .torrent files.

23       29.    Plaintiff then compared the completed digital media files to

24  Plaintiff's copyrighted works to determine whether they are infringing copies of

25  one of Plaintiff's copyrighted works.

26       30.    The digital media files have been verified to contain a digital copy of

27  a motion picture that is identical (or, alternatively, strikingly similar or

28  substantially similar) to Plaintiff's corresponding original copyrighted Works.

Complaint – Demand for Jury Trial

31.    VXN Scan used the "Info Hash" value, contained within the metadata of the .torrent file which correlated with a digital media file that was determined to be identical (or substantially similar) to a copyrighted work, to download a piece (or pieces) of multiple digital media files from Defendant using the BitTorrent network.

32.    VXN Scan only downloads pieces of digital media files from Plaintiff's copyrighted works. At no point did VXN Scan upload content to any BitTorrent user.  Indeed, it is incapable of doing so.

33.    While Defendant was using the BitTorrent file distribution network, VXN Scan established multiple direct TCP/IP connections with Defendant's IP address.

34.    Plaintiff identified these pieces as portions of infringing copies of Strike 3's motion pictures.

35.    VXN Scan detected, captured and documented Defendant transmitting pieces of Plaintiff's copyrighted motion pictures and recorded those transactions in a Packet Capture ("PCAP") file.

36.    Plaintiff also recorded infringement using its Cross Reference Tool.

37.    The Cross Reference Tool is designed on the basis of a distributed hash table ("DHT") and is a class of decentralized distributed systems that provides an identification service similar to a hash table: (key, value) pairs are stored in a DHT, and any participating node can efficiently retrieve the value associated with a given key.

38.    BitTorrent clients use a DHT to locate peers who are participating in the distribution of the digital media files related to the Info Hash. Specifically, a BitTorrent client locates and connects to the DHT network. That way it registers its own IP address while requesting IP addresses of other peers, which are distributing the same .torrent file.

39.    Using this process BitTorrent users are able to locate and connect to a

6

1    number of peers within a particular swarm, and download the data related to each

2    .torrent file.

3           40.    A BitTorrent client registers the IP address of the user into the DHT

4    with the purpose of participating in the distribution of constituent pieces of the

5    relevant digital media file.

6           41.    The Cross Reference Tool uses servers that locate .torrent files and

7    their related Info Hashes. The servers subsequently download the torrent

8    information from popular torrent websites.  The Cross Reference Tool is incapable

9    of downloading any digital media file associated with an Info Hash, and it has

10   only the ability to download torrent file metadata.

11          42.    Similar to BitTorrent clients, the Cross Reference Tool uses a DHT

12   to obtain the IP Addresses of peers registered to each .torrent file listed in the

13   DHT.

14          43.    The Cross Reference Tool detected and documented that Defendant

15   used the BitTorrent File Distribution Network with the purpose of distributing

16   digital media files that have been determined to be identical (or substantially

17   similar) to Plaintiff's copyrighted motion pictures. At no point did the Cross

18   Reference Tool upload content to any BitTorrent user.  Indeed, it is incapable of

19   doing so.

20          44.    Both VXN Scan and the Cross Reference Tool independently

21   recorded multiple infringements in the manner described above.  Collectively,

22   Plaintiff's proprietary software detected 41 number of infringements.

23          45.    Each work infringed by Defendant is listed on Exhibit A and sets

24   forth the Universal Time Coordinated (UTC) time and date of each infringement,

25   along with the Info Hash value obtained from the metadata of the corresponding

26   .torrent file.

27          46.    Exhibit A also sets forth relevant copyright information for each

28   work at issue:  the date of publication, the date of registration, and the work's

7

---

Complaint – Demand for Jury Trial

1  copyright registration number.  In a showing of good faith, Plaintiff has

2  intentionally omitted the title of the work from this public filing due to the adult

3  nature of its content, but can provide a version of Exhibit A containing the works'

4  titles to the Court or any party upon request.

5      47.    Thus, Defendant downloaded, copied, and distributed Plaintiff's

6  Works without authorization.

7      48.    Defendant's infringement was continuous and ongoing.

8      49.    Plaintiff owns the copyrights to the Works and the Works have been

9  registered with the United States Copyright Office.

10     50.    Plaintiff seeks statutory damages, attorneys' fees, and costs under

11  17 U.S.C. § 501 of the United States Copyright Act.

12                          **COUNT I**

13                  **Direct Copyright Infringement**

14     51.    The allegations contained in paragraphs 1-50 are hereby re-alleged as

15  if fully set forth herein.

16     52.    Plaintiff is the owner of the Works, which is an original work of

17  authorship.

18     53.    Defendant copied and distributed the constituent elements of

19  Plaintiff's Works using the BitTorrent protocol.

20     54.    At no point in time did Plaintiff authorize, permit or consent to

21  Defendant's distribution of its Works, expressly or otherwise.

22     55.    As a result of the foregoing, Defendant violated Plaintiff's exclusive

23  right to:

24     (A)    Reproduce its Works in copies, in violation of 17 U.S.C. §§ 106(1)

25  and 501;

26     (B)    Distribute copies of the Works to the public by sale or other transfer

27  of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3)

28  and 501;

(C)    Perform the copyrighted Works, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Works' images in any sequence and/or by making the sounds accompanying the Works' audible and transmitting said performance of the work, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publicly" perform); and

(D)    Display the copyrighted Works, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the works non-sequentially and transmitting said display of the works by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display).

56.    Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

WHEREFORE, Plaintiff respectfully requests that the Court:

(A)    Permanently enjoin Defendant from continuing to infringe Plaintiff's copyrighted Works;

(B)    Order that Defendant delete and permanently remove the digital media files relating to Plaintiff's Works from each of the computers under Defendant's possession, custody or control;

(C)    Order that Defendant delete and permanently remove the infringing copies of the Works Defendant has on computers under Defendant's possession, custody or control;

(D)    Award Plaintiff statutory damages per infringed work pursuant to 17 U.S.C. § 504(a) and (c);

(E)    Award Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F)    Grant Plaintiff any other and further relief this Court deems just and proper.

Complaint – Demand for Jury Trial

DATED this 30th day of July, 2025.

**Law Offices of Lincoln Bandlow, PC**

*s/ Lincoln D. Bandlow*
Lincoln D. Bandlow
Attorney for Plaintiff
Strike3 Holdings, LLC

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this 30th day of July, 2025.

**Law Offices of Lincoln Bandlow, PC**

*s/ Lincoln D. Bandlow*
Lincoln D. Bandlow
Attorney for Plaintiff
Strike3 Holdings, LLC

10